1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRANDI B.,

                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

Case No. 2:19-cv-00819

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of her

application for disability insurance ("DIB") benefits.

The parties have consented to have this matter heard by the undersigned

Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred,

and the ALJ's decision is reversed and remanded for an award of benefits.

I.     <u>ISSUES FOR REVIEW</u>

1. Did the ALJ properly evaluate Plaintiff's symptom testimony?
2. Did the ALJ err in evaluating medical opinion evidence?
3. Did the ALJ provide germane reasons for discounting lay witness
   testimony?

II.     <u>BACKGROUND</u>

Plaintiff filed an application for DIB on May 14, 2014, alleging a disability onset

date of May 30, 2013. AR 20, 163-71. Plaintiff amended her alleged onset date to

September 13, 2013. AR 20, 41, 183. Plaintiff's application was denied upon initial

administrative review and on reconsideration. AR 20, 99-105, 107-11. A hearing was

held before Administrative Law Judge ("ALJ") Laura Valente on May 3, 2016. AR 38-73,

1039-74. On June 29, 2016, ALJ Valente issued a written decision finding that Plaintiff

was not disabled. AR 17-33, 981-97. The Social Security Appeals Council denied

Plaintiff's request for review on June 7, 2017. AR 1-6, 1002-07.

On August 10, 2017, Plaintiff filed a complaint in this Court seeking judicial

review of ALJ Valente's written decision. AR 1009. On May 23, 2018, this Court issued

an order reversing the ALJ's decision and remanding this case for reconsideration of

Plaintiff's impairments at step two of the sequential evaluation and her residual

functional capacity ("RFC"). AR 1011-30. On August 6, 2018, the Appeals Council

vacated ALJ Valente's decision and issued an order remanding the case for further

administrative proceedings consistent with the Court's order. AR 1031-34.

On March 5, 2019, ALJ Valente held a new hearing. AR 950-80. On March 27,

2019, ALJ Valente issued a written decision finding that Plaintiff was not disabled. AR

927-43.

Plaintiff seeks judicial review of the ALJ's written decision. Dkt. 1.

III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of Social Security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

1  reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*

2  *Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

3              IV.       DISCUSSION

4        In this case, the ALJ found that Plaintiff had the severe, medically determinable

5  impairments of degenerative disc disease, anxiety disorder, panic disorder, and major

6  depressive disorder. AR 932. The ALJ also found that Plaintiff had a range of other non-

7  severe and non-medically determinable impairments. AR 933.

8        Based on the limitations stemming from these impairments, the ALJ found that

9  Plaintiff could perform a reduced range of light work. AR 935. Relying on vocational

10  expert ("VE") testimony, the ALJ found that while Plaintiff could not perform her past

11  work, she could perform other light, unskilled jobs at step five of the sequential

12  evaluation; therefore the ALJ determined at step five that Plaintiff was not disabled. AR

13  941-42, 975-76.

14        A.  Whether the ALJ erred in evaluating Plaintiff's testimony

15        Plaintiff contends that the ALJ did not provide clear and convincing reasons for

16  discounting her symptom testimony. Dkt. 8, pp. 4-11.

17        In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*

18  *v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether

19  there is objective medical evidence of an underlying impairment that could reasonably

20  be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763

21  F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no

22  evidence of malingering, the second step allows the ALJ to reject the claimant's

23  testimony of the severity of symptoms if the ALJ can provide specific findings and clear

24

25

1   and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v.*

2   *Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

3          In discounting Plaintiff's symptom testimony, the ALJ reasoned that: (1) Plaintiff's

4   allegations concerning her physical and mental impairments are inconsistent with the

5   record; (2) Plaintiff's spinal surgery successfully relieved her physical pain; (3) Plaintiff's

6   mental impairments improved with treatment; (4) Plaintiff's allegations concerning her

7   impairments are inconsistent with her self-reported activities of daily living; (5) Plaintiff

8   became injured on several occasions, and may have engaged in drug-seeking behavior;

9   and (6) there is a significant gap in Plaintiff's mental health treatment history. AR 936-

10  39.

11         With respect to the ALJ's first reason, an inconsistency with the objective

12  evidence may serve as a clear and convincing reason for discounting a claimant's

13  testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297

14  (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony

15  "solely because the degree of pain alleged is not supported by objective medical

16  evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation

17  marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir.

18  1995) (applying rule to subjective complaints other than pain).

19         Here, Plaintiff stated that she has constant pain in her back and sciatic nerve

20  pain that makes it difficult for her to lift objects, sit, stand and/or walk for extended

21  periods, or reach above her head. AR 208, 210, 960, 962-64, 971. In 2016, Plaintiff

22  testified that she fell between 10 and 20 times during the previous two years due to

23  lower back spasms and sciatic nerve pain that causes her legs to give out. AR 50.

24

25

1    Plaintiff stated that it feels as though someone is pressing a cattle prod into her back,

2    and said that she continued to have these symptoms after her lower back surgery in

3    January 2016. AR 962-63.

4         Plaintiff further testified that her physician, Dr. Hatcher, told her that to minimize

5    the risk of injury from these falls, she should remain outside for at most one hour at a

6    time. AR 63. Plaintiff stated that her physician wrote her a prescription for a cane to help

7    her walk inside her home, and a walker to help her ambulate outside. AR 49, 56, 965-

8    66.

9         Plaintiff testified that she suffers from anxiety and depression, has panic attacks,

10   and is afraid to leave her home because of post-traumatic stress symptoms stemming

11   from an attempted carjacking and a fear of falling. AR 56-59, 969.

12        The ALJ found that Plaintiff's allegations concerning her impairments were

13   inconsistent with generally normal physical and mental status examinations conducted

14   during the period at issue. AR 936-39.

15        As for the ALJ's second and third reasons, a finding that a claimant's condition

16   improved with treatment can serve as a clear and convincing reason for discounting her

17   testimony. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (the effectiveness of medication and

18   treatment are relevant to the evaluation of a claimant's alleged symptoms); *Wellington*

19   *v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of medical treatment

20   successfully relieving symptoms can undermine a claim of disability).

21        Here, the ALJ found that Plaintiff's degenerative disc disease improved

22   significantly following physical therapy and a successful operation in January 2016, with

23   Plaintiff reporting the "complete elimination" of her left leg symptoms and the medical

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 5

1  record indicating that Plaintiff had an excellent post-surgical recovery with few

2  complications. AR 490-91, 774-77, 823-26, 842-43, 861-63, 936-39, 1183. The ALJ

3  further found that Plaintiff reported increased motivation and a decrease in her panic

4  attacks after she began taking medication. AR 376, 507, 936.

5      Plaintiff concedes that her back pain decreased after surgery and physical

6  therapy, and that medication decreased her panic attacks and increased her motivation.

7  Dkt. 10 at 3. However, Plaintiff contends that her impairments remained debilitating

8  despite this improvement. *Id.*

9      Plaintiff argues that her mental impairments improved somewhat with treatment,

10  but did so very slowly and with regular setbacks, and "had not resolved by any means"

11  during the relevant period. Dkt. 8 at. 10-11, citing AR 1339-1743.

12      With respect to mental health impairments, cycles of improvement and

13  debilitating symptoms "are a common occurrence, and in such circumstances it is error

14  for an ALJ to pick out a few isolated instances of improvement over a period of months

15  or years and to treat them as a basis for concluding a claimant is capable of working."

16  *See Garrison v. Colvin*, 759 F.3d 995, 1017-18 (2014).

17      The record cited by Plaintiff, which covers a period from January 2015 through

18  October 2018, indicates that Plaintiff's mental health symptoms, sometimes

19  exacerbated by situational stressors, gradually improved, but fluctuated significantly. AR

20  1340, 1346, 1349, 1354, 1356, 1366, 1368, 1370, 1372, 1381, 1435, 1441, 1446, 1473,

21  1479, 1687, 1693, 1699, 1702.

22      In summarizing the record, the ALJ noted the waxing and waning of Plaintiff's

23  mental health symptoms, as well the exacerbation of Plaintiff's symptoms due to

24

25

1    situational stressors. AR 936-39. The ALJ did not find that Plaintiff's symptoms resolved

2    entirely – she merely found that the restrictions contained in Plaintiff's residual

3    functional capacity were enough to accommodate her work-related mental limitations.

4    AR 935, 938-39. No medically acceptable source has opined that Plaintiff would have

5    work-related mental limitations beyond those contained in the RFC, and the ALJ's

6    finding that the RFC restrictions were sufficient to account for Plaintiff's mental

7    limitations is supported by substantial evidence.

8          Although the ALJ has provided additional reasons for discounting Plaintiff's

9    testimony concerning her mental health impairments, the Court need not assess

10   whether these reasons were proper, as any error would be harmless. *See Presley-*

11   *Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle v.*

12   *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ

13   erred on one reason he gave to discount a medical opinion, "this error was harmless

14   because the ALJ gave a reason supported by the record" to discount the opinion).

15         With respect to Plaintiff's physical impairments, Plaintiff testified that after her

16   surgery in January 2016, her physician, Dr. Hatcher, told her that it would take between

17   six months and a year for the sciatic nerve pain in her left leg to resolve. AR 42-43. In

18   February and March 2016, Plaintiff stated that except for intermittent numbness, her left

19   leg symptoms had completely resolved. AR 777, 1183, 1390.

20         Despite her initial statements that her left leg symptoms resolved, Plaintiff fell

21   several times in the years after her surgery, and later reported pain and weakness in

22   her left leg, with complete loss of motor control, sensation, and strength, and increasing

23   difficulties with her right leg. AR 1220, 1325-28, 1394, 1416, 1562, 1668, 1853, 1878-

24

25

79. Plaintiff later testified that while her symptoms appeared to improve after her surgery, she attributed this to the post-surgery medication she received rather than the surgery itself, and Plaintiff's spasms and sciatic nerve pain subsequently returned. AR 962-63.

The ALJ found that there was no objective evidence to indicate any muscle weakness or loss of sensation consistent with Plaintiff's allegation that her leg "gave out" prior to her falls or suggesting a need for additional functional limitations. AR 938.

The ALJ has not accurately characterized the record, which indicates that following her falls, Plaintiff exhibited muscle spasms, reduced strength, loss of sensation, an antalgic gait, tenderness in her lower back, and a positive straight leg raising test on the left. AR 1220-21, 1326-28, 1562-65, 1668-71.

Accordingly, the ALJ's rationale for discounting Plaintiff's testimony concerning her ongoing lower back spasms and sciatic nerve pain is not supported by substantial evidence.

Regarding the ALJ's fourth reason, a claimant's participation in everyday activities indicating capacities that are transferable to a work setting may constitute a clear and convincing reason for discounting that claimant's testimony. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999).

Yet, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), citing *Cooper v. Bowe*n, 815 F.2d 557, 561 (9th Cir.1987) (a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

Here, the ALJ reasoned that Plaintiff's ability to engage in craft work, garden, sew, crochet, and take a five-hour car trip to Oregon, were inconsistent with her allegations concerning her physical impairments. AR 416-19, 421, 490, 547, 714, 936-37.

Plaintiff's ability to sew and crotchet is not a clear and convincing reason for discounting her testimony; with the exception of two incidents where she complained of elbow and wrist pain, Plaintiff has not alleged that she suffers from manipulative limitations that would impact her ability to perform these activities. AR 46-50, 207-08, 714, 1614. The record indicates that Plaintiff injured herself when she attempted to lift her sewing machine, which is consistent with her testimony that she has difficultly lifting heavy objects. AR 45, 203, 205, 207-08, 547, 714.

Plaintiff testified that on good days, she can sometimes garden with assistance from her husband, but no longer does any food gardening. AR 54. Plaintiff testified that sitting for five hours during a car trip with her husband was painful, and that they needed to stop nearly a dozen times so she could change positions. AR 61.

Plaintiff's ability to occasionally engage in these basic activities of daily living, often with great difficulty, is not a clear and convincing reason for discounting Plaintiff's testimony concerning her physical symptoms. *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities.").

As for the ALJ's fifth reason, a finding that a claimant exaggerated her symptoms to receive prescription pain medication, if supported by substantial evidence, can serve

as a clear and convincing reason for discounting a claimant's testimony. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

Here, the ALJ found that Plaintiff "continued to find herself creatively injured, slipping on a wet floor, slipping down the stairs, being involved in a motor vehicle accident, again hurting ankle on the stairs, and lacerating herself with scissors." AR 938. The ALJ found that "[g]enerally, the claimant was prescribed opiates in response" and that Plaintiff failed to provide a reasonable explanation as to why her urine drug screenings were negative for opiates on two occasions despite having a regular monthly prescription for oxycodone. AR 938-39.

The ALJ's reasoning is based on an interpretation of the record where the ALJ inferred (from examples of what the ALJ referred to as "creative" injuries) that Plaintiff fabricated, self-inflicted, or exaggerated her injuries to obtain pain medication, which she would then sell or misuse. The record does not contain affirmative evidence of malingering to support this inference.

"[W]here the record includes objective medical evidence establishing that [plaintiff] suffers from an impairment that could reasonably produce the symptoms of which [s]he complains, an adverse credibility finding must be based on clear and convincing reasons." *Carmickle v. Cmm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (internal quotation and citations omitted). "The only time this standard does not apply is when there is affirmative evidence that the claimant is malingering." *Id.* "The essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as . . . obtaining financial compensation . . . or obtaining drugs." American Psychiatric

1    Association, *Diagnostic and Statistical Manual of Mental Disorders* 726 (5th ed. 2013)

2    ("DSM V").

3            In December 2018, Plaintiff's pain management provider told her that he could no

4    longer prescribe her pain medication because her last two urine screenings were

5    negative for oxycodone. AR 1749. Plaintiff vigorously disputed this allegation of misuse,

6    stating that she was unable to take her medication for several days due to an episode

7    stomach flu. AR 1705, 1749. At the hearing in March 2019, Plaintiff stated that her

8    provider advised her that they had to stop prescribing her pain medication temporarily

9    due to state regulations, but would resume doing so at an appointment Plaintiff had

10   scheduled for two weeks after the hearing. AR 973.

11           The Plaintiff has provided a reasonable explanation for her negative drug tests,

12   and her testimony indicates that her provider's decision to stop her pain medication was

13   a temporary, precautionary measure rather than a conclusive finding that Plaintiff was

14   misusing her pain medication.

15       B.  Whether the ALJ properly evaluated medical opinion evidence

16           Plaintiff maintains that the ALJ erred in evaluating opinion evidence from

17   Plaintiff's treating physician, Mary Lou Hatcher, M.D. Dkt. 8, pp. 11-14.

18           In assessing an acceptable medical source – such as a medical doctor – the ALJ

19   must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

20   either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

21   1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*,

22   849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is

23   contradicted, the opinion can be rejected "for specific and legitimate reasons that are

24

25

supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citing

*Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d

499, 502 (9th Cir. 1983)).

On January 21, 2016, Dr. Hatcher offered an opinion concerning Plaintiff's work-related physical limitations. AR 716-18. Dr. Hatcher opined that Plaintiff could sit, stand and/or walk for less than two hours in an eight-hour day; could lift 15 pounds from waist to shoulder and 17 pounds from floor to shoulder; frequently push/pull 10 pounds and occasionally push/pull 20 pounds. AR 716.

Dr. Hatcher further opined that Plaintiff's pain varied significantly from day to day and Plaintiff would likely leave work early, require unscheduled breaks, and be absent from work more than five days per month. AR 717. Dr. Hatcher added that Plaintiff's impairments and pain medication would cause a moderate limitation in her ability to concentrate and a severe limitation in her ability to maintain appropriate work pace and productivity. *Id.* On July 7, 2016, Dr. Hatcher submitted a letter clarifying her opinion. AR 1158-59.

The ALJ assigned "little weight" to Dr. Hatcher's January 2016 opinion and her July 2016 clarification, reasoning that they: (1) were internally inconsistent regarding the amount of weight Plaintiff could manage and the amount of sitting, standing, and walking permitted; (2) were inconsistent with Plaintiff's medical improvement following her lumbar surgery; and (3) Dr. Hatcher's opinions did not address Plaintiff's opiate use. AR 939-40.

With respect to the ALJ's first reason, an internal inconsistency can serve as a specific and legitimate reason for discounting a physician's opinion. *See Morgan v.*

1    *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v.*

2    *Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of an internally

3    inconsistent medical opinion). However, to the extent that Dr. Hatcher's January 2016

4    opinion contains apparent inconsistencies, these discrepancies were addressed and

5    resolved in her July 2016 letter. AR 716-17, 1158-59.

6          As for the ALJ's second and third reasons, for the reasons discussed above in

7    connection with Plaintiff's testimony, the ALJ's findings that Plaintiff's physical

8    symptoms improved after her surgery and misused her prescription medication are not

9    supported by substantial evidence. *See supra* Section IV.A.

10         Accordingly, the ALJ has not provided specific and legitimate reasons for

11   discounting Dr. Hatcher's opinion.

12         C.  <u>Whether the ALJ erred by not evaluating lay witness testimony</u>

13         Plaintiff contends that the ALJ erred in evaluating opinions from Plaintiff's mental

14   health counselor, Kaia Scott, LMHC, and Plaintiff's husband and son. Dkt. 8, pp. 14-18.

15         When evaluating opinions from non-acceptable medical sources such as a

16   therapist or a relative, an ALJ may expressly disregard such lay testimony if the ALJ

17   provides "reasons germane to each witness for doing so." *Turner v. Commissioner of*

18   *Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v. Apfel*, 236 F.3d 503,

19   511 (9th Cir. 2001); 20 C.F.R. § 404.1502.

20         1.  <u>Ms. Scott</u>

21         Plaintiff's mental health counselor, Ms. Scott, offered an opinion concerning her

22   work-related mental limitations on January 7, 2019. AR 1160-64.

23

24

25

  ORDER REVERSING AND REMANDING
  DEFENDANT'S DECISION TO DENY BENEFITS - 13

1    Ms. Scott diagnosed Plaintiff with several mental impairments, and opined that

2    she would have a range of moderate, marked, and extreme work-related mental

3    limitations, would miss several days of work per week due to her mental health

4    symptoms, would be off task for 15 percent of a work day, would require a 15 minute

5    break every hour, and that flares of her mental health symptoms could require her to go

6    home for the entire day. AR 1161-63.

7    The ALJ assigned "little weight" to Ms. Scott's opinion, reasoning that: (1) it does

8    not adequately address the disparity between Plaintiff's allegations and normal mental

9    status examinations conducted during the period at issue; (2) it relies overwhelmingly

10   on Plaintiff's subjective allegations; (3) Ms. Scott did not offer an adequate explanation

11   for the limitations she assessed; and (4) Ms. Scott fails to cite objective evidence to

12   support her opinion. AR 940.

13   In citing the inconsistency between Ms. Scott's opinion and the results of mental

14   status examinations, the ALJ has provided a germane reason for discounting her

15   opinion. *See Baylis v. Barnhart*, 427 F.3d 1214, 1218 (9th Cir. 2005) ("Inconsistency

16   with medical evidence" is a germane reason for discrediting lay testimony); *Lewis v.*

17   *Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (In rejecting lay testimony, the ALJ need not

18   cite the specific record as long as "arguably germane reasons" for dismissing the

19   testimony are noted, even though the ALJ does "not clearly link his determination to

20   those reasons," and substantial evidence supports the ALJ's decision).

21   Accordingly, the ALJ has provided a germane reason for discounting Ms. Scott's

22   opinion.

23   2. Plaintiff's Husband and Son

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 14

Plaintiff's husband and son offered several statements concerning Plaintiff's mental and physical functioning that are broadly consistent with Plaintiff's own testimony concerning her limitations. AR 184, 195-202, 250-51, 252.

The ALJ assigned "little weight" to these statements, reasoning that they were lay opinions based on casual observation, rather than objective medical examination and testing. AR 940.

Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.2009). The fact that lay testimony may offer a different perspective than medical records alone "is precisely why such evidence is valuable" in making a disability determination. *See Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Lay witnesses, by definition, lack medical expertise, and this lack of expertise, in and of itself, cannot serve as a valid reason for discounting their statements.

Accordingly, the ALJ has not provided a germane reason for discounting lay witness statements from Plaintiff's husband and son.

D.  <u>Remand for an Award of Benefits</u>

Plaintiff asks this Court to remand this case for an award of benefits. Dkt. 8, p. 18. "'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

1
2
3

(9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

4
5

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

6
7
8
9

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

10

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

11
12
13

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

14
15
16
17
18
19
20

Here, the ALJ erred in evaluating the opinion evidence, Plaintiff's testimony, and lay witness statements concerning Plaintiff's physical impairments. Vocational experts at both hearings in this case testified that if the limitations contained in Dr. Hatcher's opinion, particularly her opinion that Plaintiff's physical limitations would likely cause her to leave work early, require unscheduled breaks, and be absent from work more than five days per month, were credited as true, there would not be a significant number of jobs Plaintiff could perform at step five of the sequential evaluation. AR 70-71, 717, 979.

21
22
23
24

In this case, there is no serious doubt that if Dr. Hatcher's opinion, Plaintiff's testimony, and the statements of lay witnesses concerning Plaintiff's physical impairments were credited as true, that the ALJ would be required to find Plaintiff

25

disabled on remand. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (courts have the flexibility to remand for further proceedings when the record as a whole creates "serious doubt" as to whether the claimant is disabled within the meaning of the Social Security Act.).

Accordingly, remand for an award of benefits is the appropriate remedy.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ erred when she found Plaintiff was not disabled. Defendant's decision to deny benefits is therefore REVERSED and this matter is REMANDED for an award of benefits.

Dated this 15th day of September, 2020.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge